

# IN THE
# TENTH COURT OF APPEALS

## No. 10-12-00225-CR

**WESLEY BRANCH,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

### From the 19th District Court
### McLennan County, Texas
### Trial Court No. 2012-552-C1

## MEMORANDUM OPINION

In three issues, appellant, Wesley Branch, challenges his convictions for two counts of sexual assault of a child and two counts of indecency with a child by contact—all second-degree felonies. *See* TEX. PENAL CODE ANN. §§ 21.11(a)(1), (d), 22.011(a)(2)(A), (f) (West 2011). We affirm.

### I. BACKGROUND

In seven counts, appellant was charged by indictment with continuous sexual abuse of a child, sexual assault of a child, and indecency with a child by contact. The

victim, J.K.-H., is the daughter of appellant's girlfriend, N.K.[1] J.K.-H. testified that she lived with her grandmother but that she visited her mother often. J.K.-H. and N.K. did not get along when J.K.-H was younger, but their relationship had improved. J.K.-H. recalled that when she was nine years old, N.K. began dating appellant. J.K.-H. liked appellant because he would buy her "clothes and stuff" that her mother and grandmother could not afford and because he told her that she was prettier than her mother. Later, J.K.-H. remembered an incident when her mother lived at The Commons apartment complex on Sanger Avenue in Waco, Texas. According to J.K.-H., appellant touched her breast and buttocks when they were walking to the store. J.K.-H. explained that appellant was showing her "how a boy would touch me," though she later clarified that appellant told her "[d]on't let boys touch you there." J.K.-H. was in the seventh grade and about eleven or twelve years old at the time of this incident.

While J.K.-H. was in the eighth grade, she started having anal and vaginal sex with appellant.[2] J.K.-H. noted that, the first time it happened, she was watching television in the living room. Appellant pulled down her pajama pants and forced her to have sex. Appellant continued to have sex with J.K.-H. every other week. J.K.-H. chose not to tell anyone because she did not want to see her mother hurt. J.K.-H.

---

[1] To protect the identity of the child victim, we identify the child victim, the child victim's mother, and the child victim's boyfriend by their initials.

[2] In her testimony, J.K.-H. also recounted that, when she was nine years old, her uncle, A.K., had sexually assaulted her. Detective Cyr testified that J.K.-H.'s family did not cooperate in the investigation of A.K. for sexual assault. According to Detective Cyr, J.K.-H.'s family did not cooperate with the investigation because they did not believe A.K. was a threat given that he was eventually incarcerated on drug charges.

acknowledged that she started dating M.I. when she was fifteen years old and that they had sex together.

Thereafter, appellant and J.K.-H. got into an argument when appellant thought she was having sex with M.I. J.K.-H. believed that appellant was jealous. She told appellant that she was going to tell N.K. about what he had done to her. N.K. was mad and could not believe that appellant had been having sex with J.K.-H. N.K. yelled and screamed at J.K.-H. and appellant. J.K.-H. then went to her grandmother's house. After telling her grandmother what had happened, the police were called.

J.K.-H. was taken to the hospital and examined by a SANE nurse, Michele Davis. J.K.-H. told Davis that appellant had sexually assaulted her since she was eleven years old. According to Davis, J.K.-H. "was a good historian. She knew her events. She was very focused. She was compliant." Davis then examined, among other things, J.K.-H.'s anus and vagina. Davis noticed that J.K.-H. had "a big hematoma or a big bruise that was bleeding on her cervix," which was painful for J.K.-H. Davis also collected DNA evidence for subsequent testing.

Serena Zboril, a forensic scientist at the Texas Department of Public Safety Crime Lab in Waco, stated that she tested the evidence collected by Davis. According to Zboril, the swabs taken from J.K.-H.'s vagina and anus both contained a mixture which included appellant's DNA, as well as M.I.'s.

Ann Cyr, a detective with the Waco Police Department, stated that, during her investigation, J.K.-H. noted that appellant had a distinct mark on his penis. Pursuant to

a court order, appellant provided a picture of his penis, which depicted the mark that J.K.-H. had identified.

Despite this testimony, appellant referenced an affidavit that J.K.-H. executed prior to trial. Specifically, J.K.-H. averred that:

> **All of the statements that I have provided to all of the individuals associated with the above entities were false.** Mr. Wesley Branch III and I have never had a sexual relationship in any form. Mr. Wesley Branch III has never assaulted me or touched me inappropriately. Every statement that I made regarding such activity was untrue. I have falsely accused Mr. Wesley Branch III out of malice and used him so that I did not get in trouble for the wrongful acts that I was committing at the time that he caught me on <u>November 21, 2011</u>. I do not want **Wesley Branch III** to be further prosecuted. It is my request that the prosecution be dismissed, and I do not want to testify against **Wesley Branch III** although I understand that I may be compelled by legal process to do so even though it is against my wishes.

(Emphasis in original). The defense also tendered a discipline referral form pertaining to J.K.-H., wherein she was accused of making a false accusation against a faculty member at school.

Before submitting the case to the jury, the State agreed to not submit an instruction on continuous sexual abuse; instead, the State proceeded on the lesser-included offense of aggravated sexual assault. The jury ultimately found appellant guilty of two counts of sexual assault of a child and two counts of indecency with a child by contact and assessed punishment at twenty years' confinement in the Institutional Division of the Texas Department of Criminal Justice with no fines for each count. The trial court ordered that the sentences run consecutively. This appeal followed.

## II. DETECTIVE CYR'S TESTIMONY

In his first issue, appellant complains about the testimony of Detective Cyr. In particular, appellant contends that Detective Cyr improperly commented on J.K.-H.'s truthfulness as a witness when she stated that J.K.-H. had no reason to lie; that a person who was lying would exaggerate and claim they were threatened; and that she found nothing to suggest that J.K.-H. was not being truthful. Essentially, appellant argues that it was improper for Detective Cyr to bolster the truthfulness of J.K.-H.'s testimony.

To preserve error for appellate review, a complaining party must make a timely and specific objection. *See* TEX. R. APP. P. 33.1(a)(1); *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). Texas courts have held that points of error on appeal must correspond or comport with objections and arguments made at trial. *Dixon v. State*, 2 S.W.3d 263, 273 (Tex. Crim. App. 1998); *see Wright v. State*, 154 S.W.3d 235, 241 (Tex. App.—Texarkana 2005, pet. ref'd). "Where a trial objection does not comport with the issue raised on appeal, the appellant has preserved nothing for review." *Wright*, 154 S.W.3d at 241; *see Resendiz v. State*, 112 S.W.3d 541, 547 (Tex. Crim. App. 2003) (holding that an issue was not preserved for appellate review because appellant's trial objection "does not comport with" the issue he raised on appeal); *Ibarra v. State*, 11 S.W.3d 189, 197 (Tex. Crim. App. 1999) (same).

On appeal, appellant directs us to six statements made by Detective Cyr that were allegedly designed to bolster the truthfulness of J.K.-H.'s testimony regarding the incidents of sexual assault. However, a review of the record shows that appellant did

not object to several of the complained-of statements.[3]  *See* TEX. R. APP. P. 33.1(a)(1); *Wilson*, 71 S.W.3d at 349.  Moreover, regarding the statements to which appellant objected, appellant's complaints on appeal do not comport with his trial objections.  *See Dixon*, 2 S.W.3d at 273; *see also Wright*, 154 S.W.3d at 241.  Thus, we cannot say that appellant has preserved the complaints in his first issue for appellate review.  *See* TEX. R. APP. P. 33.1(a)(1); *see also Resendiz*, 112 S.W.3d at 547; *Wilson*, 71 S.W.3d at 349; *Dixon*, 2 S.W.3d at 273.

Nevertheless, assuming, *arguendo*, that appellant preserved his complaints regarding Detective Cyr's testimony, we note that the same evidence was admitted elsewhere in the record without objection.  *See Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004) (noting that any error in admitting evidence is cured when the same evidence is admitted elsewhere without objection) (citing *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) ("Our rule . . . is that overruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling.")).  Accordingly, based on the foregoing, we overrule appellant's first issue.

### III.   THE STATE'S EXPERT WITNESS

In his second issue, appellant complains that the trial court abused its discretion in allowing the State's expert witness, psychologist William Lee Carter, M.D., to bolster the truthfulness of J.K.-H.'s testimony.  Specifically, appellant contends that Dr. Carter

---

[3] The record does not reflect that appellant asked for and obtained a running objection regarding the complained-of statements.

improperly testified as to whether J.K.-H. "was hallucinating or delusional or describing something solely to get attention" and whether J.K.-H. "was someone who wanted attention about the sexual abuse."

The record reflects that the State asked Dr. Carter about whether J.K.-H. was hallucinating or delusional or would describe something solely to get attention after defense counsel had already asked Dr. Carter about whether some outcry statements are the product of attention seeking. Nevertheless, when the State asked Dr. Carter about the possibility of J.K.-H. making an outcry for attention, appellant objected that the answer to the question "[i]nvades the purview of the jury." The trial court overruled appellant's objection, and Dr. Carter opined that:

> I did not see or have any inkling that she was so disturbed that she was making a statement in order to satisfy odd psychological disturbances, as you've described them.
>
> . . . .
>
> My opinion was that she was taking a risk.
>
> . . . .
>
> Many sexual abuse victims reach the point where they say to themselves and they say to the public at large, "I want out of this. I don't want to be a victim anymore. I'm coming clean with my story." And, you know, if that's what the child was doing when she made her initial disclosure to police and if that's what she was doing when she came here to court and made her statement yesterday, then we need to take it a face value.

First, we note that the Texas Court of Criminal Appeals has stated that an objection that a question "invades the province of the jury" is not a valid objection to opinion testimony. *Ortiz v. State*, 834 S.W.2d 343, 348 (Tex. Crim. App. 1992); *see* TEX. R.

EVID. 704 ("Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."); *Mock v. State*, 848 S.W.2d 215, 225 (Tex. App.—El Paso 1992, pet. ref'd). Furthermore, the basis of appellant's second issue is that Dr. Carter's testimony was designed to bolster the truthfulness of J.K.-H.'s testimony. Once again, appellant's complaints on appeal do not comport with his objections at trial. *See Dixon*, 2 S.W.3d at 273; *see also Wright*, 154 S.W.3d at 241. Thus, based on the foregoing, we conclude that appellant has failed to preserve this issue for review. *See* TEX. R. APP. P. 33.1(a)(1); *see also Resendiz*, 112 S.W.3d at 547; *Wilson*, 71 S.W.3d at 349; *Dixon*, 2 S.W.3d at 273. We overrule appellant's second issue.

## IV. THE WORK-PRODUCT PRIVILEGE

In his third issue, appellant argues that the trial court erred in stating that appellant's investigator, Ed McElyea, would have to turn over his work-product material if he took the stand and testified.

The record reflects that the trial court, defense counsel, and the State engaged in a lengthy discussion regarding calling McElyea to the stand to testify. The State argued that if McElyea was called to testify, the State would be able to review all of the notes that McElyea relied on in preparing to testify. After giving appellant time to mull over whether he wanted to call McElyea to testify, the trial court noted the following:

> I don't think you've laid the ground work for impeachment, because the witness that we're talking about, [J.K.-H.], was not told the contents of any statement, the time and place when the statement was made, she wasn't given an opportunity to explain or deny the statement, any particular

statement. Until you lay the predicate, you're not allowed to impeach the witness with any extrinsic evidence or anything. Do you agree with that?

In response to the trial court's question, appellant immediately withdrew his request to call McElyea as a witness. The record does not reflect that the trial court actually excluded McElyea as a witness. *See* TEX. R. APP. P. 33.1(a)(2)(A) (stating that an issue is preserved by a timely and specific objection that is ruled on by the trial court); *see also Pena v. State*, 353 S.W.3d 797, 807 (Tex. Crim. App. 2011). Because appellant withdrew his request to call McElyea as a witness, we conclude that no error has been preserved. *See Mays v. State*, 285 S.W.3d 884, 889-90 (Tex. Crim. App. 2009); *see also Sanderson v. State*, No. 10-11-00255-CR, 2012 Tex. App. LEXIS 3539, at **2-3 (Tex. App.—Waco May 2, 2012, no pet.) (mem. op., not designated for publication). Accordingly, we overrule appellant's third issue.

## V.   CONCLUSION

Having overruled all of appellant's issues on appeal, we affirm the judgments of the trial court.

AL SCOGGINS
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed July 18, 2013
Do not publish
[CR25]